**UNITED STATES OF AMERICA**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**PIKEVILLE**

COMMONWEALTH OF KENTUCKY                                                                 PLAINTIFF

VS.   **MOTION OF THE DEFENDANT, RAY STAPLETON, TO SUPPRESS ITEMS SEIZED ON OCTOBER 4, 2011, AND OCTOBER 5, 2011, AND FOR THE RETURN OF ALL SEIZED ITEMS INCLUDING ALL MONEY**

RAY D. STAPLETON                                                                                      DEFENDANT

Comes the Defendant, Ray Stapleton, and moves to suppress the following:

(a) all items including cash seized on October 4, 2011, in Salyersville, Kentucky;

(b) all items including cash seized on October 5, 2011, from the defendant's vehicle at the Pikeville KSP Post; and

(c) all items including cash seized on October 5, 2011, from the defendant's residence in Paintsville; and

(d) all medical charts seized from the Defendant's clinic.

## BACKGROUND

On October 4, 2011, the Defendant was stopped at a traffic checkpoint. He was charged with the following offenses:

1. Failure to wear seat belts;

2. Failure to produce insurance card;

3. No/Expired registration receipt;

4. Possession open alcohol beverage container in a motor vehicle; and

1

    5. Operating a motor vehicle under the influence of alcohol/drugs w/.08, aggravator, 1st offense.

Of the initial charges, the following charges have been dismissed:

1. Failure to wear seat belts;

2. Failure to produce insurance card;

3. No/Expired registration receipt;

A copy of the citation is attached.

After the Defendant was arrested he was handcuffed and placed in the police cruiser. At this point the police searched the vehicle that the Defendant was driving and found a wallet with cash inside, pills [the Defendant operated a medical clinic], a small locked safe, and locked luggage. The defendant was charged with DUI, alcohol. The vehicle was then impounded and taken to the KSP Post in Pikeville. The next day the KSP obtained a search warrant to break open the safe and locked luggage within the vehicle and also obtained a second search warrant for the defendant's residence in Paintsville.

<u>I</u>

**<u>THE SEARCH OF THE VEHICLE WAS ILLEGAL
SINCE IT WAS CONDUCTED AFTER THE DEFENDANT
WAS LODGED IN THE BACK OF A POLICE CRUISER</u>**

At the time the vehicle was searched, the Defendant was in the back of a police cruiser in handcuffs. Obviously, he was no threat to anyone and was not in a position to destroy any evidence. In the recent case of <u>Rose vs. Commonwealth</u>, 322 S.W.3d 76 [2010], the Kentucky Supreme Court held that the search of a vehicle after the Defendant was secured in the back of a deputy's cruiser is illegal. The only exception

would be if the police were searching for evidence of the crime of arrest. The crime of arrest in this case was DUI, alcohol, and open alcohol container in motor vehicle so there was nothing in the vehicle for which to conduct a search. Again, he was only charged with traffic offenses.

## II

## THE DEFENDANT DID NOT CONSENT TO A SEARCH OF THE VEHICLE

Although the citation states that the Defendant gave consent for a search, this is not correct. Consent was not given. Also there is no signed consent. Moreover, the Defendant was under arrest and was not advised of his right to refuse to consent to the search. If he was as intoxicated as the citation indicated, he could not have given consent anyway.

But even if there was consent it was not voluntary and the government bears the burden of proof on this issue. In United States v. Beauchamp, 659 F.3d 560 (6th Cir. 2011), the defendant was walking around at 2:30 a.m. in a high crime area known for drugs. When Beauchamp saw a police officer he walked away in another direction. Another officer then saw Beauchamp and instructed him to stop. After the officers questioned him he was frisked for weapons. The officers then asked for permission to conduct a search and Beauchamp consented. The officers found $1,300.00 in cash, a cell phone, and 18 individually wrapped rocks of crack cocaine hidden in plastic between the cheeks of defendant's butt. The Sixth Circuit held that the consent had not been given voluntarily and discussed the factors which go into the consent equation:

3

"* * * * *

The government bears the burden of proving, through 'clear and positive testimony 'that the consent to search was voluntarily.

 * * * * *

Voluntariness *572 is determined by examining the totality of the circumstances.  * * * * *  Several factors should be examined in the consent calculus.  First, a court should examine the characteristics of the accused, including the age, intelligence, and education of the individual; <u>whether the individual understands the right to refuse to consent (emphasis added)</u>; and whether the individual understands his or her constitutional rights.  See <u>United States v. Jones, 846 F.2d 358, 360 (6th Cir.1998).  While the police do not have to inform an individual of his right to refuse, the absence of such a warning is considered in the totality of the circumstances analysis (emphasis added)</u>.  See <u>Bustamonte, 412 U.S. at 227, 93 S.Ct. 2041,</u>  Second, a court should consider the details of the detention, including the length and nature of detention, <u>id.</u> at 226, 93 S. Ct. 2041; the use of coercive or punishing conduct by the police, <u>id.</u> at 226, 93 S. Ct. 2041;  and indications of 'more subtle forms of coercion that might flaw [an individual's] judgment.' <u>United States v. Watson,</u> <u>423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).</u>  * * * * *

    [22]   Police coercion vitiated any consent Beauchamp may have given in this case, and thus consent could not have been made freely or voluntarily.  Without being told that he could refuse, Beauchamp, said 'yes' to Officer Fain's request to search after another uniformed officer had arrived on the scene.  More importantly, Beauchamp gave his response immediately after Office Fain had placed his hands on Beauchamp's body to conduct the frisk.  A scared, defenseless man is not in a position to say no to a police officer whose hands are still on or just removed from his body while another officer is standing just a few feet away.  See <u>Bustamonte,</u> <u>412 U.S. at 229, 93 S.Ct. 2041 </u>(noting that 'account must be taken of …the possibly vulnerable subjective state of the person who consents' in considering the totality of the circumstances): <u>Worley,</u> <u>193 F.3d at 386</u> (holding that consent to search was not freely given to two officers but was 'merely a response conveying an expression of futility in resistance to authority

4

or acquiescing in the officers' request'); <u>United States v. Young,</u> 318 Fed.Appx. 407, 410 (6th Cir.2009) (unpublished opinion) (noting that a scared and upset defendant may, dependent on the facts, show duress that factors into the consent calculus).

\* \* \* \*"

In <u>United States v Tillman</u>, 963 F.2d 137 (6th Cir. 1992), the defendant was stopped at an airport and taken to a room for interrogation. He consented to a search of his bag after the police said they would keep him there until they got a search warrant. Again, the Sixth Circuit held that the consent to search was not voluntary.

Aside from the fact that Stapleton did not consent, even such consent would not have been voluntary anyway. Stapleton was handcuffed on his way to the back of a police cruiser and obviously would not have been in a position where he would feel free to deny the request.

Therefore, at an absolute minimum the Court should conduct an evidentiary hearing to determine: [a] if the consent was actually given, [b] if consent was given and withdrawn, or [c] if consent was given under duress or while the Defendant lacked capacity to consent due to intoxication.

### III

### **EVEN IF THE POLICE HAD CONSENT TO SEARCH THE VEHICLE [WHICH THEY DID NOT] THE INCRIMINATING NATURE OF THE ITEMS WAS NOT READILY APPARENT AND THEREFORE NOT SUBJECT TO SEIZURE**

When the police went through the vehicle they found a wallet with cash in it, locked luggage, a locked safe, a case of beer with none of the cans open, and prescription pills which were wrapped up and not in plain view.

5

The fact that there was cash in a wallet in the vehicle does not make it incriminating.  In <u>United States vs. Berenguer</u>, 562 F.2d 206 [2nd Cir. 1977] the police raided an apartment and arrested the appellant for drug trafficking.  After the defendant was handcuffed they found a wallet together with some change lying on top of a bureau containing $3,200.00 in one hundred dollar bills.  The government claimed that this money was lawfully seized as being in plain view.  In rejecting this argument the Second Circuit stated:

> "*     *     *     *     *
>
> [4]     The plain view doctrine for warrantless searches and seizures is subject to three express requirements:  (1) the agents must be lawfully on the premises; (2) the discovery must be inadvertent, and (3) its incriminating nature must be immediately apparent. <u>Coolidge v. New Hampshire, 403 U.S. 443, 464-69, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)</u>. It is the third requirement that is clearly missing in this case.  The billfold offered no immediately apparent evidence of an inculpatory nature.  It was only after the billfold itself had been searched that the large denomination currency was revealed.
>
> *     *     *     *     *"

Therefore, the money in the billfold was neither subject to seizure nor could it serve as a basis for seizing the other items in the vehicle.  Likewise, the case of beer, the contents of the sealed bags, and the bag with pills were not visible and therefore could not be readily incriminating.  None of those items are illegal contraband subject to seizure.

6

## IV.

## THERE IS NO NEXUS BETWEEN THE DUI FOR WHICH THE DEFENDANT WAS CHARGED AND THE ITEMS SEIZED

In addition to the cash in the wallet, the police seized a locked briefcase, a small locked safe containing money, a case of beer with no opened cans, and pills which were sealed in a bag and not visible.

In <u>United States vs. $506,231 in United States Currency</u>, 125 F.3d 442 [7th Cir. 1997], the police received information from a drug addict that he sold stolen property to individuals running a pizzeria. The police obtained a warrant to search the pizzeria, the two individuals running it, and to seize a camera, a snow blower, a TV, and three VCR's. The police did not find any of these items during the search but did find and seized three unregistered guns and $506,076.00 in currency. The money was found inside a 44 gallon barrel which was located inside either a boarded up elevator or a dumbwaiter shaft. It was wrapped in plastic bags and consisted mostly of small bills. The analysis of the Seventh Circuit was very instructive:

> "\*     \*     \*     \*     \*
>
> *The existence of any sum of money, standing alone, is not enough to establish probable cause to believe the money is forfeitable. See e.g., United States v. $5,000 in United States Currency, 40 F.3d 846, 850 (6th Cir. 1994); United States v. $191,910.00 in United States Currency, 16 F.3d 1051, 1072 (9th Cir. 1994); United States v. Baro, 15 F.3d 563, 568 (6th Cir.)('To date, this Court has not held that currency is contraband.'), cert denied, 513 U.S. 912, 115 S.Ct. 285, 130 I.Ed.2d 201 (1994); United States v. $67,220.00 in United States Currency, 957 F.2d 280, 285 (6th Cir. 1992)('[N]o court yet has held that the presence of a large sum of cash is insufficient, standing alone, to establish probable cause for forfeiture.') As far as we can tell, no court in the nation had yet held that, standing alone, the mere existence of currency, even a lot of it, is illegal. We are certainly not willing to be the first to so hold. Absent other evidence connecting the money to drugs, the existence of money or its*

>method of storage are *not* enough to establish probable cause for forfeiture under *Section 88*.
>
>\*     \*     \*     \*     \*
>
>The only reference to narcotics whatsoever in the complaint for forfeiture comes from uncorroborated and unsubstantiated double hearsay in Agent Paulin's affidavit.
>
>\*     \*     \*     \*     \*
>
>[17][18] We reiterate that the government may not seize money, even half a million dollars, based on its bare assumption that most people do not have huge sums of money lying about, and if they do, they must be involved in narcotics trafficking or some other sinister activity. Moreover, the government may not require explanations for the existence of large quantities of money absent its ability to establish a valid narcotics-nexus.
>
>\*     \*     \*     \*     \*
>
>As we said in a much more notorious case than the one at bar, albeit not in the forfeiture context, 'Property of private citizens simply cannot be seized and held in an effort to compel the possessor to "prove lawful possession." ' *United States v. One Residence and Attached Garage of Anthony J. Accardo, 603 F.2d 1231, 1234 (7th Cir. 1979)*.
>
>\*     \*     \*     \*     \*"

The Defendant owns the Auto Accident and Healthcare Clinic in Auxier. Many of the pill bottles belonged to family members and were for disposal. Moreover, the Defendant was charged with DUI, alcohol, not DUI drugs. The citation refers to "strong presence of alcoholic beverage coming from his person" and possession of open alcohol beverage in motor vehicle. Nowhere is there a reference to DUI, drugs.

## VI

## THE SEARCH OF THE IMPOUNDED VEHICLE WAS ILLEGAL

### (a)

### THE SEARCH WARRANT WAS ILLEGAL

Aside from the fact that the seizure and impoundment of the vehicle would constitute evidence emanating from the "Fruit of the Poisonous Tree," the search warrant for the vehicle impounded by the State Police at Pikeville was signed by the Magoffin District Judge.  However, the vehicle was no longer in Magoffin County; it was in Pike County and no application for a search warrant was made to a Judge of the Pike District Court.

### (b)

### THE SEARCH WARRANT FOR THE VEHICLE WAS OVERLY BROAD

The relevant language of the search warrant is as follows:

> "illegal drugs, chemical agents or products used in the manufacture of illegal narcotics, money, financial instruments, records (written and electronic) regarding money received or owed, tax records, telephone directories and statements, photographs depicting illegal activities or associates, journals recording illegal activities, utility records, how to books or periodicals, vehicles or equipment used to produce or convey illegal drugs, items or weapons used to secure illegal drug operations, _____ purchased with proceeds from illegal drug sales."

In <u>United States v. Gardner</u>, 537 F.2d 861 (6th Cir. 1976), the Sixth Circuit noted that search warrants do not authorize general searches. The Court went on to rule that a search warrant authorizing the seizure of "all firearms and

9

ammunition" was overly broad and suppressed the seizure of a sawed-off shot gun. The language from the present search warrant was so sweeping that it obviously amounts to no more than a "fishing expedition".

## VII

## THE SEARCH OF THE STAPLETON RESIDENCE WAS ILLEGAL

Once again, aside from the fact that the basis for the search warrant was product of the "Fruit of the Poisonous Tree" emanating from illegal searches of the vehicle and therefore itself illegal, there was no nexus between any alleged illegal activity and the Stapleton residence. Following his arrest for DUI, alcohol, and while at the Big Sandy Detention Center, Ray Stapleton told Trooper Hall that he owned Auto Accident and Healthcare Clinic at Auxier, a legitimate medical facility licensed by the State of Kentucky. The language of the search warrant for the residence contains the same overly broad language as contained in the search warrant for the vehicle in violation of Gardner, supra.

But the major defect is that there is no nexus between anything seized from the vehicle and the residence. This falls squarely within United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006). In that case the defendant was arrested at his residence on a warrant for simple assault. During a pat down search the officers found over six grams of crack cocaine. Based on this they obtained a search warrant for the residence and found distribution quantities of crack cocaine and firearms. McPhearson was then indicted for intent to

distribute crack cocaine, felon in possession of a firearm, and possession of a firearm relating to a drug-trafficking crime.  The District Court granted a defense motion to suppress.  The Sixth Circuit affirmed holding that there was an insufficient nexus between the crack cocaine found on his person and a search of the residence. In a footnote the Court even noted that in some instances even the fact that the residence to be searched was occupied by known drug dealers failed to establish a sufficient nexus between the residences and criminal activity.

      In the present case there are no allegations in the search warrant that any activities relating to the medical clinic were conducted out of the residence.  While the affidavit for the search warrant does state that an unidentified informant has been seen at the medical clinic and received little or no examination, <u>that relates solely to the clinic and not the residence that was searched</u>.  The affiant then simply makes a general statement that in his experience subjects often times maintain business records, cash and drugs at their personal residence for safe keeping.  Clearly a general statement will not support a search warrant for a residence.

      Additionally, there is nothing illegal about what was seized.  First, as noted in <u>US v. $506,231 in United States Currency</u>, supra. having a large amount of cash in not against the law.  Second, the pill bottles belonged to Tina Stapleton (some of which go back to 2009), Mary Music (Doug Stapleton's mother who lives next door), and one bottle belong to Richard Castle (Tina Stapleton's father).  Third, the various business records which were seized are not contraband.

Nor will the <u>Leon</u> good-faith exception save the Government's case for the same reason it did not save the Government's case in <u>McPhearson</u>, supra.: there was not enough indicia of reliability to establish the required nexus to search the residence.

## VIII

### THE SEIZURE OF THE FILES FROM THE MEDICAL CLINIC WERE ILLEGAL

Although the state police obtained consent to search the clinic, such consent did not authorize a seizure of all the files for the simple reason it would be impossible for the police to determine if any of those files were incriminating.  This goes back to <u>United States vs. Berenguer</u>, supra, as set forth in Section III herein.

### CONCLUSION

For the foregoing reasons, all of the items seized together with the money should be immediately returned to the Defendant.

/s/Hon. Eldred E. Adams, Jr.
110 East Main St., P.O. Box 606
Louisa, Kentucky  41230
(606) 638-4890
(606) 638-0313 FAX
bud@eeadams.com

### CERTIFICATE OF SERVICE

I, hereby certify that on December 24, 2012, I electronically filed the foregoing with the Court by using CM/ECF system, which will send a notice of electronic filing to the following:

Roger.West@usdoj.gov

Curtislegal1@windstream.net

Owens.steve@att.net

wkentvarney@gmail.com

CoxECF@aol.com

mazzoliecf@aol.com

                                                s/ Hon. Eldred E. Adams,