UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:12-cr-11-ART-EBA-3

UNITED STATES OF AMERICA,                                      PLAINTIFF,

V.              **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

STEPHEN C. ARNY, M.D.,                                     DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

INTRODUCTION

This matter is before the Court on Defendant Stephen C. Arny, M.D.'s motion to suppress statements made to law enforcement at the time of his arrest, in violation of Miranda v. Arizona, 384 U.S. 436 (1966). [R. 485]. The United States concedes that Arny was in custody and was being interrogated at the time he made the statements at issue, and agrees that Miranda v. Arizona is controlling. [R. 488 at 2]. However, the United States maintains Defendant "was advised of his Miranda warnings, knew and understood his rights, never requested an attorney, and did not invoke his right to remain silent," [id.], stressing that Miranda does not require a written waiver or formal statement. [Id.]. Following an evidentiary hearing, the undersigned took the matter under advisement. [R. 491]. For reasons set forth below, the undersigned recommends that Defendant's Motion to Suppress, [R. 485], be DENIED.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

In August of 2012, Dr. Arny was arrested at his residence in Shelbyville, Kentucky, by Kentucky State Police. When police arrived, Dr. Arny and another younger male, believed to be his child, grandson, or other family member, were both at his residence. [R. 501 at 9]. The

1

officers and Dr. Arny were at the residence for a total of about 30 minutes, while Arny waited for someone to come collect the child. During this time, though he never gave a formal statement, Dr. Arny spoke with Detective Randy Hunter, one of the KSP officers who executed the arrest warrant at Arny's resident, and answered some of the detective's questions while they were waiting at his residence. [R. 419 at 32–33]. After being placed under arrest, Dr. Arny then made additional statements while in the police car on the way to the jail. [Id. at 65].

After he was convicted of conspiracy to distribute and unlawfully dispense prescription pain medications, Dr. Arny moved for a new trial based on ineffective assistance of counsel, and the district court granted the motion. United States v. Arny, 831 F.3d 725 (6th Cir. 2016). Though the government appealed, the Sixth Circuit affirmed. In preparing for a new trial, Dr. Arny has now moved to suppress statements he made to Det. Hunter while at his residence, and the subsequent statements he made in the police vehicle, on grounds he was never read his Miranda warnings. [Id. at 32]. Det. Hunter has testified that he did read Dr. Arny his rights, [R. 306 at 3, 27], and though Arny refused to sign a Miranda waiver, he did acknowledge he understood his rights before making the statements at issue. [Id.].

## STANDARD OF REVIEW

For a defendant's confession to be admissible under the Fifth Amendment, the defendant must "voluntarily, knowingly and intelligently" waive his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 444 (1966); Colorado v. Connelly, 479 U.S. 157, 169 (1986). The government bears the burden of proving that a defendant "voluntarily, knowingly, and intelligently waived his right to silence and counsel." United States v. Bentley, 726 F.2d 1124, 1126 (6th Cir. 1984). In order to determine whether a statement is voluntarily made, the Court must consider the

2

totality of circumstances, including factors such as: 1) police coercion; 2) length of interrogation; 3) location of interrogation; 4) continuity of interrogation; 5) the suspect's maturity; 6) the suspect's education; 7) the suspect's physical condition and mental health; and 8) whether the suspect was advised of Miranda rights. Withrow v. Williams, 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Coercive police activity is a necessary element for finding that a confession was involuntary. Connelly, 479 U.S. at 167.

The government has the burden of proof to show a defendant waived his Miranda rights by a preponderance of the evidence, and must show that, given the totality of the circumstances, it was more likely than not that the defendant was read his Miranda rights and acknowledged his right to remain silent. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Additionally, a refusal to make a written confession does not prohibit all further discussion with police, and does not negate the defendant's waiver of rights and resulting oral confession as to the statements made. Connecticut v. Barrett, 479 U.S. 523 (1987). It follows that a recitation of Miranda warnings need not be done in written form, and a corresponding waiver need not be in written form, for the defendant to waive his Miranda rights.

## ANALYSIS

Dr. Arny's memorandum in support of the motion to suppress, [R. 485-1], asserts that he spoke with Det. Hunter at the time of his arrest, and made a number of statements at his residence, and in the police car on the way to the jail, which he now seeks to suppress. However, Defendant's motion rejects the argument that he was ever read Miranda warnings prior to making these statements, stressing that no signed waiver was ever produced. Defendant's motion explains that the statements at issue were previously introduced by prosecution at Dr.

Arny's first trial as purported confessions, before the motion for a new trial was granted:

> Det. Hunter testified that Dr. Arny stated that he did not have any background in pain management. (*Id.* at 28). He further testified that Dr. Arny stated that he felt that he could not provide an adequate degree of patient treatment with conditions at the clinic, particularly in light of the lack of staffing and the patient load. (*Id.* at 29). Dr. Arny purportedly stated that he stayed too long and didn't leave soon enough. (*Id.* at 32). Finally, Det. Hunter stated that Dr. Arny stated that he could not see all the patients because there were so many, and that he had created a form for them to fill out. (*Id.* at 46). In the Government's closing, it emphasized that Dr. Arny admitted he had no experience in the pain clinic setting, and that Dr. Arny admitted that he did not see every patient. (R. 307, Closing Arguments, 5, 11) . . . Those statements should be excluded from the next trial.

[R. 485-1 at 2]. The parties do not dispute that Dr. Arny was in "custody" during the conversation with Det. Hunter at his residence and in the police cruiser while transported to jail, and do not dispute the incriminating nature of the statements. [Id. at 3]; [R. 488 at 2]. The only dispute is whether Arny was read his Miranda warnings by the arresting officers before making the statements. Because the parties dispute whether that key event ever took place, the undersigned held a hearing on November 21, 2016, to address the factual dispute. [R. 491].

At the hearing, the government first called Det. Hunter, who testified that he and two other KSP troopers went to Dr. Arny's residence on August 16, 2012, to execute an arrest warrant. [R. 501 at 9]. Hunter testified that he utilized a KSP-96 form (introduced into evidence as Exhibit 1), the standard form used by Kentucky police when executing arrest warrants or interviewing individuals, to effectuate the Miranda warning during his casual conversation with Arny at the residence. [Id. at 11]. Hunter further testified that he read each of the form's five provisions concerning the Defendant's rights aloud[1], as well as the form's Waiver of Rights

---

[1] The standard KSP-96 form Det. Hunter alleges he used contains the following five provisions: (1): You may remain silent; (2): Anything you say can be used against you in court or any other Proceedings; (3): You have a right to consult an attorney before you make any statement or answer any questions and may have your attorney with you during the questioning; (4): You may request the court to appoint an attorney for you if you cannot afford to hire

4

provision, and upon presenting the KSP-96 form for Dr. Arny's review, Arny indicated that he understood his rights, according to Hunter's testimony. Det. Hunter then recounted having a casual conversation with Dr. Arny for about thirty minutes, until someone came to pick up the child from Defendant's residence, at which point one of the other troopers took Arny into custody. [Id. at 14]. Hunter recalled that he and Arny "talked pretty much most of the time," and "talked as [they] walked through the house after he was read the Miranda rights." [Id. at 16].

Det. Hunter memorialized this thirty-minute conversation with Arny, and Defendant's subsequent statements, in a typed written summary (admitted as Exhibit 2). [Id. at 18]. At the hearing, Det. Hunter read excerpts from his memorialized statement:

> Yes sir. Dr. Stephen C. Arny was arrested on August 12 –August the 16, 2012, at his residence at 841 Abingdon Lane, Shelbyville, Kentucky. Also present was KSP Trooper Frank Flowers and, Unit 363, and Trooper Matt Rogers, Unit 464. Dr. Arny was advised of his Miranda rights with the KSP-096 form. Dr. Arny agreed to speak with this officer but didn't sign the rights wavier at the bottom of the page.

[Id. at 19]; [R. 516 at 3]. Hunter testified that the supplement "fairly and accurately depict[s] the interview . . . and the discussions [they] had." [R. 501 at 18]. The Court notes that Det. Hunter also previously testified at Dr. Arny's first trial, where he similarly testified that Arny had been advised of his rights on the date of his arrest, indicated that he understood his rights, and asked no further questions. [R. 306].

On cross-examination, defense asked Det. Hunter a number of questions concerning Exhibit 2, the typed memorialized supplement; Hunter agreed that his conversations with Arny were accurately memorialized in the supplement, and did not recall Arny's ever expressing that

---

one; and (5): You may stop the questioning at any time by refusing to answer any further questions or by requesting a consultation with your attorney. [R. 516 at 2–3].

he no longer wanted to talk to the detective anymore, noting such a fact would have been included in the detective's supplement. [R. 501 at 20].

KSP Trooper Matt Rogers then testified on the government's behalf, stating he was also present at Dr. Arny's residence during the arrest on August 16, 2012. [Id. at 33]. Rogers testified that he remembered Det. Hunter and Dr. Arny sitting down at a table, at which point Hunter read Arny's Miranda rights to him. Rogers' testimony also indicated that, after the Miranda warnings were read, Hunter and Defendant had a conversation regarding the pain clinic Defendant had opened, and the details of the surrounding investigation. [Id. at 35].

Third and finally, Dr. Arny testified on his own behalf at the evidentiary hearing. He testified that neither Hunter nor any of the other troopers read him his Miranda warning, and that he did not recall seeing the KSP-96 form or hearing any discussion about the form. [R. 501 at 39–40]. On cross, the government referenced the prior statements Arny made during a post-conviction evidentiary hearing following his first trial, and noted inconsistencies in Defendant's statements from that July 10, 2015 hearing and the November 21, 2016 hearing before the undersigned. The government specifically referenced page 33 of the previous hearing's transcript, which reflected that Arny had testified, "[Det. Hunter] was trying to get me to sit down and put a form in front of me to sign and give a statement, but I declined." [R. 419 at 32]. At the most recent hearing before the undersigned, however, Arny testified that the "form was across the room and I was across the room from the form, and I never saw the form and I never sat down to look at the form or discuss the form with [Hunter]." [R. 501 at 41]. Defendant did agree that he did not tell Det. Hunter he had nothing to say, did not refuse to talk without having an attorney present. Further, though he would not testify that he made the statements recorded in

6

the detective's written memorialized supplement, Arny did admit to saying something to the effect that he "stayed too long at the Paintsville Auto and Accident" during his conversation with the detective. [Id. at 45].

Following the suppression hearing, the Court directed the parties to file supplemental briefs. [Rs. 515, 516]. The government's supplemental brief argues that "it is clear that the Defendant's testimony is inconsistent, contradictory and unsupported," whereas "[i]n contrast, the testimony of Hunter is credible, beyond reproach, and corroborated by the testimony of another witness, KSP Trooper Rogers." [R. 516 at 7]. Defendant's supplemental brief stresses that he never signed a waiver form, and emphasizes the fact that Det. Hunter never tape-recorded or videotaped the alleged Miranda warning or waiver. Defendant's brief cites to United States v. Lewis, 355 F. Supp. 2d 870 (E.D. Mich. 2005), where the Sixth Circuit granted a motion to suppress. In Lewis, the officers alleged that the defendant was informed of his rights and waived them orally, though the defendant testified that he did not sign the waiver form, and the Lewis court ultimately held that the government had not met its burden under the totality of the circumstances and ruled in defendant's favor. Id. at 873.

It is well established that "incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her Miranda rights." United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998) (citing Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). However, the United States need only prove a waiver of Miranda rights by a preponderance of evidence. Colorado v. Connelly, 479 U.S. 157 (1986). Additionally, where a defendant refuses to make a written confession but then makes incriminating statements after receiving Miranda warning, the refusal to make a written

7

confession does not negate the waiver of rights and resulting oral confession. Connecticut v. Barrett, 479 U.S. 523 (1987)[2].

Having considered the parties' arguments and supplemental filings, the Court has made the determination that Dr. Arny was read his Miranda rights by Det. Hunter at Arny's residence on the date of his arrest, and his subsequent statements should not be suppressed on that basis. Because the testimony of the Defendant and the arresting officer(s) directly contradict each other regarding whether Miranda warnings were ever given, the Court must make a credibility determination to determine the issue. See, e.g., United States v. Cooke, 915 F.2d 250, 252 (6th Cir. 1990); see also United States v. Barrena, No. 1:07-CR-66, 2007 WL 5312565, at *7 (E.D. Tenn. Dec. 28, 2007), report and recommendation adopted, No. 1:07-CR-66, 2008 WL 2705229 (E.D. Tenn. July 8, 2008).

For example, in United States v. Hill, the Court made a credibility determination that the arresting agent did read the defendant his Miranda rights at the beginning of an interview with the defendant, despite defendant's stating he "did not recall" receiving Miranda warnings. D.E. 29–1 at 1. United States v. Hill, No. 6:15-CR-09-GFVT-HAI, 2015 WL 6557164, at *5 (E.D. Ky. Oct. 8, 2015), report and recommendation adopted, No. CR 15-09-GFVT, 2015 WL 6555419 (E.D. Ky. Oct. 29, 2015). During his testimony, the defendant said that he did not recall hearing the warnings, and that the agent "didn't read me my rights," stating "I don't think he read them to me." Id. The agent in Hill testified he "absolutely" read the defendant Miranda rights, however, and where this testimony was further corroborated by another task force agent,

---

[2] In Barrett, the defendant stated he would not make a written statement without counsel, but then admitted his involvement in the sexual assault. One of the officers reduced to writing his recollection of defendant's statement, and the confession was introduced at trial; the trial court refused to suppress the confession, finding defendant had fully understood the Miranda warnings and voluntarily waived his right to counsel. Barrett, 479 U.S. at 523.

the Court found that the officer's "testimony was more credible on this point."  Id.  Likewise, the Hill Court found that defendant presented no evidence to contest the officers' testimony that he was a cooperative, cordial, and forthcoming interviewee.  Id.

Here, though Arny previously testified that, regarding Miranda, he "certainly [doesn't] remember those famous words spoken to [him] that day," [R. 419 at 32], the Court finds the opposing testimony of Detective Hunter to be very credible.  For one, Hunter's testimony that he properly advised Dr. Arny of his Miranda rights was both memorialized in a written statement by the detective following the conversation, and was also corroborated by Trooper Rogers' testimony.  Unlike the Lewis case to which Defendant cites in support of suppression, where "no officer took notes of an interview to memorialize a defendant's statement," Lewis, 355 F. Supp. at 873, here, the interviewing officer did memorialize his conversation with Arny, and subsequently testified to the accuracy of the memorialization.  Furthermore, KSP Trooper Matt Rogers testified that he was there to assist with the arrest on August 16, 2012, and testified that he remembered Det. Hunter and Dr. Arny sitting down together at a table, at which point Hunter read the Defendant his Miranda rights.  [R. 501 at 33–34].

Furthermore, while Det. Hunter's testimony has remained consistent and unambiguous throughout, and is supported by the testimony of another state trooper, Dr. Arny's testimony has been contradictory at times.  Previously, at a July 10, 2015 evidentiary hearing before the district judge, when asked whether he made a formal statement to Det. Hunter at his residence, Arny testified that "[Hunter] was trying to get me to sit down and put a form in front of me to sign and give a statement but I declined," [R. 419 at 32–33], yet later at the November 21, 2016 hearing before the undersigned, Arny testified that he did not recall seeing that form or hearing any

9

discussion about a form. [R. 501 at 40]. These statements are contradictory, and bring into question the credibility of Arny's surrounding testimony regarding whether he received his Miranda warnings.

The Court finds the detective's testimony to be more credible. Especially where the detective has memorialized his conversation with Dr. Arny, and where Arny's previous testimony that he refused to sign a Miranda acknowledgement form contradicts his recent testimony that he never saw or discussed a waiver form, the Court is persuaded that Dr. Arny was advised of his Miranda rights with the KSP-096 form, and while he did not sign the wavier form, as reflected by Detective Hunter's testimony, and corroborated by Trooper Rogers' testimony, Arny did indicate that he understood his rights, and then willingly continued to speak with the officer when he made the statements at issue. The United States has, through a preponderance of evidence, Connelly, 479 U.S. 157, persuaded the Court that Dr. Arny was read his Miranda rights, never requested an attorney nor invoked his right to remain silent, and thereby waived his Miranda rights, and his subsequent statements should not be suppressed on those grounds.

## CONCLUSION

For the above reasons, it is RECOMMENDED that the Defendant's Motion to Suppress, [R. 485], be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). General objections or objections that require a

judge's interpretation are insufficient to preserve the right to appeal. <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

 Signed March 24, 2017.

